(30 App. Div. 404.)

## TYLER v. ANGLO-AMERICAN SAVINGS & LOAN ASS'N OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    May 24, 1898.)

BUILDING AND LOAN ASSOCIATIONS—AUTHORITY OF MANAGER.

If a real-estate broker, upon calling at the office of a building and loan association with reference to securing a purchaser for land owned by it, is referred to the secretary and general manager, who negotiates with him on the subject, answers letters addressed by the broker to the association, and finally employs the broker to procure a satisfactory purchaser, the broker is justified in relying upon the manager's authority to employ him on the usual terms, and upon procuring a purchaser, who is accepted by the association as satisfactory, is entitled to his commission, although the association subsequently refuses to sell to the proposed purchaser, and disclaims its manager's authority to employ a broker.

Appeal from trial term, Kings county.

Action by Frank H. Tyler against the Anglo-American Savings & Loan Association of New York.    From a judgment in favor of plaintiff for $350, and from an order denying a new trial, defendant appeals.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

Stephen Van Wyck, for appellant.
Paul E. De Fere, for respondent.

WOODWARD, J.    The plaintiff in this action was and is a real-estate broker doing business in the city of Brooklyn.    He learned that the defendant had acquired certain property on Throop avenue, Brooklyn, and called upon the Anglo-American Savings & Loan Association, at their office, in the Times Building, New York City, to make inquiries in respect to the property, and was referred to A. H. Gilbert, secretary and manager.    Mr. Gilbert told the plaintiff that he desired to place the property upon the market, and an agreement was entered into by which the plaintiff was to be paid the usual commission, of 1 per cent., if he succeeded in furnishing a satisfactory customer.    There was some understanding that the defendant would loan money upon the property, following the usual custom of building and loan associations, to such purchaser; but as this was purely an incident to the sale, and did not affect the contract, in so far as this plaintiff's compensation is concerned, it can have no important place in this case, although it seems to have been largely relied upon by the defendant in its attempt to deny its legal responsibility in the premises.    Soon after the visit of the plaintiff to the office of the defendant, and on the 10th day of February, 1896, the plaintiff addressed a letter to the "Anglo-American Loan and Savings Institution, Times Building, New York," in which he stated that he had a purchaser for the lots, who desired a building loan, and that, if they cared to entertain the proposition, "I will bring the party to your office."    In reply to this letter, which, it is important to note, was addressed to the defendant, the plaintiff received the following letter, written upon the stationery of the defendant, showing the officers of the company, and its detailed address:

"New York, February 11th, 1896.

"Dear Sir: Your favor of the 10th received, and contents noted. I will be glad to see you at the office, with the gentleman referred to, any time during the week.

"Yours, very truly,       A. H. Gilbert,

"Sec. & Gen. Mangr."

Pursuant to this request, the plaintiff produced his prospective purchaser at the office of the defendant, introducing him to Mr. Gilbert; and a negotiation was entered into, which, after continuing through various stages, which are not material to the issue in this case, resulted in an agreement on the part of Mr. Gilbert to sell the property to the man who had been brought forward by the plaintiff as a purchaser. Subsequently the defendant, without carrying out its agreement to sell, transferred the property to another purchaser, paying a commission for such sale to another agent. It is now sought to avoid the obligation on the part of the defendant to this plaintiff on the ground that Mr. Gilbert, the secretary and general manager of the association, was not authorized to make the contract alleged on the part of the plaintiff. This proposition, though elaborately argued, and bolstered up by a long line of citations, is not established. The question involved in this action is not whether Mr. Gilbert, as secretary and general manager of the defendant corporation, was authorized to make loans and to sell real estate without the sanction of the corporation through its board of directors, but whether he was authorized, as such secretary and general manager, to enter into a contract with this plaintiff to pay him the customary commission for securing a satisfactory purchaser, and whether the plaintiff, having furnished such customer, can be defeated in this action because the defendant has failed to carry out its agreement to sell to the purchaser who was furnished. Upon this proposition there can hardly be two opinions. The plaintiff went to the office of the defendant, a corporation, to transact business. He was referred to Mr. Gilbert as the proper person with whom this business might be transacted; and while it will not be contended that the plaintiff would be justified, without further inquiry, in entering into a contract involving matters of large importance, and which would naturally require the co-operation of the corporation, through its board of directors, the defendant is hardly in a position to say that it was not within the legitimate scope of the powers and duties of a general manager of a building and loan association to make a contract to pay the usual commission for a purchaser of real estate held by the corporation. That is an incident of the business of these associations, and comes as naturally within the province of the implied powers of an officer of this character as the employment of any other servant of the corporation. It has no bearing upon this case that the bargain, as between the defendant and the proposed purchaser, was outside of the province of the general manager, without the concurrence of other officers. The contract was that the plaintiff was to have his commission upon supplying a satisfactory customer; and the defendant, through its general manager, having accepted the customer, is estopped from asserting a lack of authority on the part of its agent to make the contract, in so far as this

plaintiff is concerned.   As was said in the case of Hall v. Herter, 90 Hun, 280, 35 N. Y. Supp. 769, where the plaintiff had written a letter to a corporation, much as the plaintiff in the case at bar has done, and the letter was answered by the confidential correspondent:

"This letter, coming from the source from which the correspondence of the corporation ordinarily emanated, was undoubtedly competent evidence, as against the corporation.   In these trading corporations, whose business is necessarily conducted much the same as that of a firm, it certainly cannot be necessary for every person who has dealings with the corporation to show a resolution of the board of directors of the corporation for everything which is done in and about the business of the corporation, when it is attempted to bind the corporation by the action of its officials.   In these days, when corporations may be formed for the transaction of any business, where a party is held out by the corporation as occupying a position to answer for the corporation, as it appears beyond question that this correspondent was, the corporation will be bound by any action of his coming within the ordinary executive duties pertaining to the transaction of the business of the corporation; and no resolution of the board of directors will be necessary to clothe with vitality every word that he utters, or letter that he writes.   If a contrary rule were to be adopted, then these corporations would be mere traps for the purpose of deceiving the unwary, and be the means of using the charters conferred by the state as an instrument of fraud."

Again, it was said in the case of Martin v. Manufacturing Co., 122 N. Y. 174, 25 N. E. 305:

"If the scope of the agent's authority be proven, and it appears that acts like the one in question would, under ordinary circumstances, be within the authority, a presumption arises that the necessary circumstances did exist, and that the act in question was authorized;" citing many authorities.

In the case at bar it was established that the plaintiff, desiring to transact business with the defendant, visited its office, and was referred to Mr. Gilbert, the general manager, and that a letter addressed to the defendant was answered by Mr. Gilbert as secretary and manager; that an agent did enter into an agreement similar to the one between the plaintiff and this defendant, which agreement was made through Mr. Gilbert as general manager, was honored by the corporation, and the commission was paid.   Indeed, the transaction took place in reference to the same property involved in this action.   "It follows from the general principle, now well settled," say the court in the case of Rathbun v. Snow, 123 N. Y. 349, 25 N. E. 380, "to the effect that third persons may act upon the apparent authority conferred by the principal upon the agent, and are not bound by secret limitations or instructions qualifying the terms of the written or verbal appointment, that the defense based upon the limitation in the by-laws of the company, of which the plaintiff had no knowledge, cannot be sustained.   By-laws of business corporations are, as to third persons, private regulations, binding as between the corporation and its members, or third persons having knowledge of them, but of no force, as limitations per se, as to third persons, of an authority which, except for the by-law, would be construed as within the apparent scope of the agency."   In the case of McCreery v. Ghormley, 6 App. Div. 170, 39 N. Y. Supp. 1036, the court say, citing authorities, that "the general rule is that an agreement by an officer or agent of a corporation who assumes to act in its behalf can

be enforced against the corporation, where it has received the benefit of the agreement"; and this rule cannot be said to become inoperative because the corporation, by its own act, has been deprived of the benefit.    Spelling on Private Corporations (volume 2, p. 832) states, in speaking of executed contracts, made without expressed authority, by an agent of a corporation:

"The assent of the corporation thereto will be presumed; for, when a person has received and appropriated the fruits of a transaction done in his name, and under apparent authority from him, he thereby furnishes the highest possible evidence of his approval."

The cases relied upon by the defendant all have to do with contracts which were obviously outside of the legitimate scope of the officers making them, and have no bearing upon the questions involved in this action.    There is a wide difference between a contract for incidental labor in securing a customer for a particular piece of property, where the payment involves only the customary commission, and a contract which undertakes to bind the corporation during the life of individuals; and it is in dealing with cases of this character that the courts have laid down the rule that the plaintiff must show the authority for entering into the contract, beyond the mere assumption of the individual to act.    If the contract which is sought to be enforced in the case at bar involved the question of the authority of Mr. Gilbert to contract to loan the money without the concurrence of the board of directors or other officers, or if it involved his authority to sell the real estate on his own motion, a very different conclusion might be reached; but none of these questions are involved in this appeal.    There was a simple contract between the plaintiff and the defendant, by which the latter undertook to pay the usual commission of 1 per cent. for a satisfactory purchaser of certain real estate, valued at $35,000.    The plaintiff produced such a customer, and the defendant, after a series of delays, said to have been caused by reason of the illness of the president, whose action was necessary to secure the presence of the executive committee to pass upon the proposition, entered into an agreement to sell such property to the customer so produced.    The presumption must be that, the delay having been made for the express purpose of submitting the proposition to the executive committee, the general manager, in entering into this contract of sale, acted with the approval of the necessary officers; but, whether he did or not, the corporation cannot be allowed to deny the authority of its general manager to enter into a temporary contract to pay the usual commissions for the disposal of its real estate, or to defraud this plaintiff of his compensation because of its own wrong in refusing or neglecting to carry out its agreement to sell.

The judgment and order appealed from are affirmed, with costs. All concur.