SMITH, Superintendent of Banks, Appellant, v. McKEE, Respondent.

(226 N. W. 766.)

(File No. 6659. Opinion filed September 20, 1929.)

*Buell F. Jones,* of Britton, and *Williams & Sweet,* of Rapid City, for Appellant.

*H. F. Fellows,* of Rapid City, for Respondent.

BROWN, J. Two cases were consolidated in a trial to the court without a jury, in one of which Smith as superintendent of banks sued on a note made by McKee to the Citizens' Bank & Trust Company, which McKee admitted making but claimed as a defense and counterclaim that the bank owed him for services, and in the other McKee as plaintiff sued the bank for the same services. He claimed that he was employed by the bank to commence and carry through a quieting title action involving between 9,000 and 10,000 acres of land, that he successfully performed the services and rendered a bill or statement to the bank for the reasonable value of such services on which there remained unpaid the sum of $330.06, and from a judgment for this amount and an order denying a new trial the superintendent of banks appeals.

In substance, appellant advances but two propositions: First, that McKee's employment was not made on behalf of the bank; and, second, that the president of the bank, through whom McKee claimed he was employed, had no authority to bind the bank by the employment of an attorney, that such authority could only be conferred by the board of directors, and no such authority was attempted to be shown.

We think the trial court's finding that McKee was employed by the bank is well sustained by the evidence. McKee testified that the president of the bank came to his office, and stated

that the bank had a bunch of land in Custer and Pennington counties in which it was necessary to quiet the title, delivered to him a number of abstracts, stated that the land was in the name of one Van Sant and the action would have to be commenced in Van Sant's name as plaintiff, that McKee asked if he was to look to Van Sant for his payment, and the president replied, "No," that he should look to the bank.

It appears that at the time McKee was employed to bring the quieting title action, Minnekota Land Company, a corporation, had some interest in the land, that this corporation and some of its officers owed the bank over $30,000, and the bank expected when the title was quieted that a sale of the land or part of it would be made, from which it expected to be paid what was owing to it by Minnekota Land Company and its officers. The president of the bank was also secretary and treasurer of Minnekota Land Company, and the argument is advanced that the action was really brought for the benefit of Minnekota Land Company instead of the bank, but, as we have already stated, there was sufficient evidence to sustain the finding of the court that McKee's employment was on behalf of the bank, and we cannot say that the preponderance of the evidence is against the court's finding to that effect.

■■■ In support of the proposition that the president of the bank had no authority to employ McKee in this quieting title action in the absence of a resolution by the board of directors authorizing such employment, appellant cites Pacific Bank v. Stone, 121 Cal. 202, 53 P. 634, and other cases. In several of these cases in which it was held that the president of a corporation had not, simply by virtue of his office, authority to employ an attorney, the corporation had a regular attorney in its employ, and it was held that in view of that fact it would not be presumed that an officer of the corporation had authority, simply by virtue of his office, to employ another attorney; and in Pacific Bank v. Stone, supra, while it was held that the president of a bank had no ex officio power to bind it by an express contract for a specific compensation to an attorney, the court expressly refrained from saying what might have been its conclusion, under all the facts and circumstances of the case, had the action been one for the value of the work and labor performed, and it may further be observed that the character of the employment in that case was of a kind not usual in the transaction of

banking business. The action was "for the purpose of testing the question as to whether the bank directors should have charge of the settlement of the bank's affairs instead of the bank commissioners," and in that case also the bank at the time had regular retained attorneys. In the present case, the character of the employment was within the ordinary business of banks in this part of the country. Banks in South Dakota frequently become interested in real estate through loans made to their customers, and the perfecting of titles, so that indebtedness due them may be realized out of the real estate to which such titles relate, is an incident of banking business. We therefore conclude that the employment by a bank of an attorney to perform such work is within the scope of its ordinary business, and in the absence of other evidence on the subject, it should be presumed that the bank president had authority to employ an attorney in such case. Sweeny v. United Underwriters Co., 29 S. D. 576, 137 N. W. 379; Stablein v. Hutterische Gemeinde, 43 S. D. 54, 177 N. W. 810; Rogers v. Standard Life Insurance Co. (S. D.) 222 N. W. 667.

█ There is a conflict in the evidence as to whether or not $150 that was paid McKee was in full payment for all of his services in this matter, but the trial court's finding on that question is supported by evidence, and we cannot say that there is a preponderance of evidence against it, and such finding must therefore be sustained.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ. concur.

CAMPBELL, J., concurs in result.